## BALL *v*. MURRY.

The patentee of a lock assigned his right, and received as a consideration certain bonds of his assignees. At the same time he gave them a covenant that he had a right to the letters patent, and that if any person should establish a lawful right to the invention, the bonds should be void, and that no recovery should be had on the bonds until the suit that might be then depending, should be determined in his favour by the decree of a lawful court. In a suit on the bonds, the obligors cannot set up the invalidity of patent as a defence.

CERTIFICATE from the Nisi Prius.

*March* 6. Debt on a bond. The defendant proved that the bond had been given to Ball as part of the consideration of an assignment of a patent right. At the time of the assignment Ball executed and delivered to the assignees a sealed instrument, reciting the transfer of the right in consideration of this and several other bonds, and concluding in these words:—

"Now, be it known, that I, the said Daniel Ball, in consideration of the said sum of money, do hereby covenant and agree to guarantee that I have good right and title to the aforesaid letters patent, and if any person or persons shall hereafter establish a lawful right to the said patented invention, then and in that case, the said bonds and every of them shall remain null and void, and no recovery be had upon the same by the said Daniel Ball, his heirs, executors, administrators, or assigns, until the suit that may be then pending, involving the right of the said Daniel Ball, be determined in his favour by the decree of a lawful court."

The defendant then gave evidence that the lock was not a new invention. The only portion of the evidence on the paper-book was that of a witness, who proved he had made a lock to operate by gravity, but on a different construction from the plaintiff; and another, who stated that Ball's locks met with a ready sale.

The questions raised in this court were on the charge. The prayers for instructions were, 1st, that the parties were bound by their agreement as to the manner in which the validity of the patent should be tried, and that it could not be questioned in this suit; and 3d and 5th, that the plaintiff, if he finally perfected the lock, and rendered it capable of useful operation, was entitled to a patent, although others may have had the idea, and made experiments towards putting it into practice, and although all the component parts may have been known under a different combination, or used for different purposes.

The first point his honour, SERGEANT, J., reserved, leaving the

question to the jury, whether the patent was for a distinct important combination or improvement, as the act required, or was substantially the same as the locks exhibited and described in the testimony.

The errors assigned were the omissions to answer the points.

*Risler* and *Perkins*, for plaintiff in error.—The agreement of the parties controls their rights. They have stipulated that no defence shall be taken on account of a defect in the patent, unless that be established by third persons, and in a lawful court, which refers to the courts of the United States, in whom this jurisdiction is alone vested.

The other points (the same in substance) were material; we had a right to a definition of the plaintiff's rights as a patentee, which an affirmative answer would have given in the words of 7 L. Rep. 278.

*Ingraham,* contrà.—The agreement stipulating that the bond should become void or be suspended in certain events, never meant to exclude a defence to an action on the same grounds. It was intended that if one such action should be successful, it should be conclusive in favour of the defendants, to avoid litigation. The other points were answered in substance by the court.

*April* 7. ROGERS, J.—The plaintiff was entitled to an affirmative answer to his third and fifth propositions, which are in substance the same, and depending upon the same principle. Whoever finally perfects a machine and renders it capable of useful operation is entitled to a patent, though others may have had the idea and made experiments towards putting it into practice—and although all the component parts may have been known under a different combination, or used for a different purpose. Thus Fulton was, as all agree, entitled to a patent for the successful application of steam to purposes of navigation, notwithstanding the attempt, partially successful, of Fitch, many years before. The principle is not only just as to the inventor, but has been expressly ruled by Mr. Justice Story in Washburn *v.* Gould, 7 Law Rep. 278. The questions were undoubtedly material to the issue, particularly in reference to the testimony of Kohler and Brenson. But to these questions, so vital to the plaintiff, no answers are given either in form or substance (that we can perceive); certainly none so clear and precise as the plaintiff had a right to require.

But the fourth point strikes at the root of the defence. The

patent never having been questioned by a third party, and never having been repealed, the defendant cannot assail it in this suit. The clause of guarantee, of the same date with the bond, after reciting the consideration of the agreement, runs thus: [His honour here stated the concluding clause of the agreement.]

Although the contract is not technically or precisely expressed, yet the intention of the parties cannot well be misunderstood. Ball, in the first place, covenants that he has a lawful right to the patent, and then a stipulation is inserted, obviously designed for the benefit of the plaintiff, for as to the defendants it would be unnecessary, as they were entitled to a defence on general principles, if it were not an original invention.

It has two aspects, clearly intended to prevent, for obvious reasons, the defence now attempted. It is agreed the bond shall be null and void only when a person or persons shall establish a lawful right to the patent by a decree of a lawful court, plainly meaning a decree of a court of the United States, to whom jurisdiction in such cases is given. But as a suit may be brought in such court and remain undecided, it is further agreed, that whilst it is pending, the suit on the bond shall be suspended until the right to the patent is determined by the court in favour of the plaintiff.

In the one case the bond is void, in the other it is merely suspended. It was an agreement, as we read it, that all questions as to the validity of the patent should be tried in another suit, involving the very point, and until this question was settled elsewhere, the defendant should be at liberty to resist payment. The design was to prevent the obligors from conjuring up objections to the patent, so as to avoid payment of their obligations. This they are now endeavouring to do, after having enjoyed the benefit of the plaintiff's invention, without the right, so far as we know, being disputed by a single person living. It is but an act of justice to the learned judge who tried the cause, that it seems to have been ruled *pro forma*, that the whole case might be brought up and settled by the appellate court.

Judgment reversed, and a *venire de novo* awarded.